O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

Case No. EDCV14-902-VEB

DAVID LYNN WEBB,

              Plaintiff,            DECISION AND ORDER

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

              Defendant.

## I. INTRODUCTION

In July of 2011, Plaintiff David Lynn Webb applied for Disability Insurance Benefits under the Social Security Act. The Commissioner of Social Security denied the application.  Plaintiff, represented by The Law Offices of Harry J Binder and

Charles E. Binder, P.C., commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 8, 9). On December 28, 2015, this case was referred to the undersigned pursuant to General Order 05-07. (Docket No. 17).

## II. BACKGROUND

Plaintiff applied for Disability Insurance Benefits on July 18, 2011, alleging disability beginning December 26, 2005, due to various physical and mental impairments. (T at 188-89).[1]  The application was denied initially and on reconsideration.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  On November 27, 2012, a hearing was held before ALJ Lynn Ginsberg. (T at 40).  Plaintiff appeared with an attorney and testified. (T at 46-54).  The ALJ also received testimony from Alan Cummings, a vocational expert. (T at 54-59).

On January 7, 2013, the ALJ issued a written decision denying the application for benefits.  (T at 16-39).  The ALJ's decision became the Commissioner's final decision on March 20, 2014, when the Appeals Council denied Plaintiff's request for review. (T at 1-6).

---

[1] Citations to ("T") refer to the administrative record at Docket No. 13.

DECISION AND ORDER – WEBB v COLVIN 14-CV-00902-VEB

On May 6, 2014, Plaintiff, acting by and through his counsel, filed this action seeking judicial review of the Commissioner's decision. (Docket No. 1). The Commissioner interposed an Answer on November 12, 2014. (Docket No. 12). The parties filed a Joint Stipulation on January 6, 2015. (Docket No. 14).

After reviewing the pleadings, Joint Stipulation, and administrative record, this Court finds that the Commissioner's decision should be reversed and this case be remanded for calculation of benefits.

## III. DISCUSSION

### A.   Sequential Evaluation Process

The Social Security Act ("the Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if any impairments are of such severity that he or she is not only unable to do previous work but cannot, considering his or her age, education and work experiences, engage in any other substantial work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A),

1   1382c(a)(3)(B). Thus, the definition of disability consists of both medical and

2   vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

3   The Commissioner has established a five-step sequential evaluation process

4   for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step

5   one determines if the person is engaged in substantial gainful activities. If so,

6   benefits are denied. 20 C.F.R. §§ 404. 1520(a)(4)(i), 416.920(a)(4)(i). If not, the

7   decision maker proceeds to step two, which determines whether the claimant has a

8   medially severe impairment or combination of impairments. 20 C.F.R. §§

9   404.1520(a)(4)(ii), 416.920(a)(4)(ii).

10   If the claimant does not have a severe impairment or combination of

11   impairments, the disability claim is denied. If the impairment is severe, the

12   evaluation proceeds to the third step, which compares the claimant's impairment(s)

13   with a number of listed impairments acknowledged by the Commissioner to be so

14   severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii),

15   416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or

16   equals one of the listed impairments, the claimant is conclusively presumed to be

17   disabled. If the impairment is not one conclusively presumed to be disabling, the

18   evaluation proceeds to the fourth step, which determines whether the impairment

19   prevents the claimant from performing work which was performed in the past. If the

20

DECISION AND ORDER – WEBB v COLVIN 14-CV-00902-VEB

claimant is able to perform previous work, he or she is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity (RFC) is considered. If the claimant cannot perform past relevant work, the fifth and final step in the process determines whether he or she is able to perform other work in the national economy in view of his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a mental or physical impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" that the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## B.    Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is

1  supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir.

2  1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

3      "The [Commissioner's] determination that a plaintiff is not disabled will be

4  upheld if the findings of fact are supported by substantial evidence." *Delgado v.*

5  *Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(citing 42 U.S.C. § 405(g)). Substantial

6  evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119

7  n 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d

8  599, 601-02 (9th Cir. 1989). Substantial evidence "means such evidence as a

9  reasonable mind might accept as adequate to support a conclusion." *Richardson v.*

10  *Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and

11  conclusions as the [Commissioner] may reasonably draw from the evidence" will

12  also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review,

13  the Court considers the record as a whole, not just the evidence supporting the

14  decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir.

15  1989)(quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

16      It is the role of the Commissioner, not this Court, to resolve conflicts in

17  evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational

18  interpretation, the Court may not substitute its judgment for that of the

19  Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th

20

6

DECISION AND ORDER – WEBB v COLVIN 14-CV-00902-VEB

1  Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be

2  set aside if the proper legal standards were not applied in weighing the evidence and

3  making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d

4  432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the

5  administrative findings, or if there is conflicting evidence that will support a finding

6  of either disability or non-disability, the finding of the Commissioner is conclusive.

7  *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

8  **C.    Commissioner's Decision**

9       The ALJ summarized Plaintiff's prior history of disability benefit

10  applications.  In particular, Plaintiff was found to be not disabled by a prior ALJ in a

11  decision dated October 27, 2010, with respect to a disability benefits application

12  filed on May 5, 2009.  In that application (as in the instant application), Plaintiff

13  alleged disability beginning December 26, 2005, the date of a severe motorcycle

14  accident.  The Appeals Council denied Plaintiff's request for review of the prior

15  ALJ's decision and no appeal was taken.  As such, the ALJ in the present case found

16  that *res judicata* applied with respect to the period between December 26, 2005 (the

17  alleged onset date) and October 27, 2010 (the date of the ALJ's prior decision). (T at

18  20).  In other words, the Court agrees that the question of whether Plaintiff was

19  disabled during that period cannot be re-litigated.

20

DECISION AND ORDER – WEBB v COLVIN 14-CV-00902-VEB

With respect to the instant application for benefits, the ALJ determined that the relevant time period was the 5 month period between October 28, 2010 (the day after the prior ALJ's decision) and March 31, 2011 (the date last insured). (T at 20). The ALJ noted that, under applicable law, the prior ALJ's decision gave rise to a rebuttable presumption of non-disability, requiring Plaintiff to show a "changed circumstance" with respect to the unadjudicated period. (T at 20-21).

As noted above, the ALJ determined that Plaintiff last met the insured status requirements of the Social Security Act on March 31, 2011 (the "date last insured"). The ALJ found that Plaintiff did not engage in substantial gainful activity between December 26, 2005 (the alleged onset date) and the date last insured.  The ALJ concluded that, as of the date last insured, Plaintiff's multiple trauma (related to the accident that occurred on the alleged onset date), resulting in fractured ribs, chest pain, liver lacerations, sprains/strains to the right shoulder; obesity; depressive disorder; pain disorder; diabetes mellitus; and right knee osteoarthritis were "severe" impairments under the Act. (Tr. 23).

However, the ALJ found that, as of the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (T at 23).

DECISION AND ORDER – WEBB v COLVIN 14-CV-00902-VEB

The ALJ determined that, as of the date last insured, Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 CFR § 404.1567 (b); in particular, the ALJ found that Plaintiff: could lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk for 4 hours and sit for 6 hours in an 8-hour workday, could not climb ladders, ramps, or stairs; cannot work at heights; can occasionally work above shoulder level with the right upper extremity; can understand, remember, and carry out simple instructions; can make judgments on simple work-related decisions; can interact appropriately with supervisors, co-workers, and the public in a routine work setting; and can respond to usual work situations and changes in a routine work setting. (T at 25).

The ALJ concluded that, as of the date last insured, Plaintiff was unable to perform any past relevant work. (T at 31).

Considering Plaintiff's age (51 years old on the date last insured), education (at least high school), work experience, and residual functional capacity, the ALJ concluded that, as of the date last insured, there were a significant number of jobs in the national economy that Plaintiff could have performed. (T at 32). Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined under the Act, between December 26, 2005 (the alleged onset date) and March 31, 2011 (the date last insured). (T at 35). The ALJ thus denied the application for benefits. As

DECISION AND ORDER – WEBB v COLVIN 14-CV-00902-VEB

noted above, the ALJ's decision became the Commissioner's final decision when the

Appeals Council denied Plaintiff's request for review. (T at 1-6).

**D.    Disputed Issues**

As set forth in the parties' Joint Stipulation (Docket No. 14), Plaintiff offers

three (3) arguments in support of his claim that the Commissioner's decision should

be reversed.  First, Plaintiff contends that the ALJ erred in concluding that Plaintiff's

changed circumstances were insufficient to overcome the presumption of non-

disability.  Second, he argues that the ALJ erred when weighing the medical opinion

evidence.  Third, Plaintiff challenges the ALJ's credibility determination.  This

Court will address each argument in turn.


**IV. ANALYSIS**

**A.    Changed Circumstances**

The doctrine of *res judicata* applies to bar reconsideration of the issue of

disability with respect to a period to which the Commissioner has already made a

determination. *Krumpleman v. Heckler*, 767 F.2d 586, 588 (9th Cir. 1985).   In

addition, the prior denial of a claim for disability benefits creates a presumption that

the claimant continued to be able to work after the date of the prior denial. *Miller v.*

*Heckler*, 770 F.2d 845, 848 (9th Cir. 1985).   The claimant can overcome this

DECISION AND ORDER – WEBB v COLVIN 14-CV-00902-VEB

presumption of non-disability in a subsequent application for benefits by showing "changed circumstances" since the prior denial of benefits. *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985). In other words, the claimant must show that there has been a worsening of his or her impairments (and/or new impairments) since the previous adjudication. *Id.*

Plaintiff's prior application, in which he also claimed disability starting in December 2005 (when he was involved in a serious motorcycle accident), was denied on October 27, 2010. (T at 78-86).  As such, the ALJ correctly concluded that there is a presumption that Plaintiff continued to be non-disabled after that date. (T at 20-21).   In addition, because the instant application seeks disability insurance benefits, Plaintiff must show that he became disabled within the meaning of the Social Security Act sometime between October 27, 2010 (the date of the prior denial) and March 31, 2011 (the date last insured). *See Webb v. Barnhart*, 433 F.3d 683, 690 (9th Cir. 2005)(claimant seeking disability insurance benefits must establish disability prior to the date last insured).

The ALJ determined that Plaintiff had not established changed circumstances sufficient to rebut the presumption of continued non-disability during the relevant time period. (T at 25-31).  This Court finds the ALJ's decision flawed and concludes that a remand is required.

DECISION AND ORDER – WEBB v COLVIN 14-CV-00902-VEB

The ALJ concluded that there was no new and material evidence with regard to Plaintiff's mental impairments, noting that Plaintiff "received very little mental health treatment" during the relevant time period, had "unremarkable" mental status examinations, and, in fact, "experienced some improvement during the relevant period in his symptoms and functioning." (T at 24, 28).   These findings are not supported by the record.

In December of 2010, Plaintiff committed himself to a psychiatric hospital due to suicidal ideations. (T at 276).   In an outpatient psychiatric evaluation conducted later that same month, Dr. Christopher Sangdahl assigned a Global Assessment of Functioning ("GAF") score[2] of 45 (T at 359), which is indicative of serious impairment in social, occupational or school functioning. *Haly v. Astrue,* No. EDCV 08-0672, 2009 U.S. Dist. LEXIS 76881, at *12-13 (Cal. CD Aug. 27, 2009).

A nursing psychiatric assessment performed on December 21, 2010, described Plaintiff as depressed. (T at 364).   Another psychiatric evaluation was performed in January of 2011, showing an improved GAF score of 60 (T at 351), which is nevertheless indicative of moderate symptoms.  *See Sandburg v. Astrue*, No. CV-10-219, 2012 U.S. Dist. LEXIS 2018, at *22 (E.D.Wa. Jan. 6, 2012).

---

[2] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).

DECISION AND ORDER – WEBB v COLVIN 14-CV-00902-VEB

1       As such, while the ALJ concluded that Plaintiff "received very little mental

2  health treatment" during the relevant time period, the record indicates that Plaintiff

3  experienced a psychiatric hospitalization and underwent multiple psychiatric

4  evaluations during this time.  In this regard, it is worth noting that the relevant time

5  period is only five (5) months long.

6       It does appear that Plaintiff did not begin regular, ongoing psychiatric

7  treatment for his condition until February of 2012, when he began seeing Dr.

8  Wolfgang Klebel, a psychologist, on a regular basis.  This was well after the date

9  last insured.  The ALJ apparently assumed that Plaintiff did not seek regular

10  treatment during the relevant time period because his mental impairments were not

11  as severe as alleged.  This assumption is flawed for several reasons.

12       First, Plaintiff's psychiatric hospitalization and evaluations during the relevant

13  period undermine that assumption.

14       Second, the ALJ did not explore alternative explanations for Plaintiff's failure

15  to seek regular psychiatric help during the relevant time period, as required under

16  SSR 96-7p.[3]  Indeed, Plaintiff testified that his "insurance changed," which allowed

17

18  [3] Under SSR 96-7p, an ALJ must not draw an adverse inference from a claimant's failure to seek or
    pursue treatment "without first considering any explanations that the individual may provide, or

19  other information in the case record, that may explain infrequent or irregular medical visits or
    failure to seek medical treatment." *Id*.; *see also Dean v. Astrue*, No. CV-08-3042, 2009 U.S. Dist.
    LEXIS 62789, at *14-15 (E.D. Wash. July 22, 2009)(noting that "the SSR regulations direct the

20

DECISION AND ORDER – WEBB v COLVIN 14-CV-00902-VEB

1  him to start seeing a psychiatrist in 2012 (T at 50). This provides further context for

2  the fact that Plaintiff was not receiving regular psychiatric treatment during the

3  relevant time period.  In any event, "it is a questionable practice to chastise one with

4  a mental impairment for the exercise of poor judgment in seeking rehabilitation."

5  *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir.1996)(quoting *Blankenship v.*

6  *Bowen*, 874 F.2d 1116, 1124 (6th Cir.1989)).

7      Third, as discussed further below, two medical experts (including Plaintiff's

8  treating psychologist) opined that Plaintiff's serious mental health impairments and

9  limitations pre-dated the date last insured. (T at 439, 459).

10     With regard to Plaintiff's right knee impairment, the ALJ acknowledged the

11  existence of new evidence: (1) a February 2011 x-ray showing abnormalities

12  consistent with moderate osteoarthritis, internal fixation of the lateral tibial plateau,

13  and an old fracture deformity (T at 27, 366); (2) positive clinical findings from Dr.

14  Powers, an orthopedist, based on complaints of chronic knee pain (T at 28, 343); and

15  (3) an April 2011 MRI that showed "complete maceration of the medial meniscus

16  with severe degenerative osteoarthritic changes" and findings suggestive of a "full

17

18  _____

19  ALJ to question a claimant at the administrative hearing to determine whether there are good
    reasons for not pursuing medical treatment in a consistent manner").

20

              DECISION AND ORDER – WEBB v COLVIN 14-CV-00902-VEB

thickness tear of the anterior cruciate ligament with a joint effusion . . . ." (T at 28, 334-35).

The ALJ recognized that this evidence "reveal[ed] significant degenerative changes at [Plaintiff's] right knee," but discounted it because it fell outside of the relevant time period.  (T at 29).  Indeed, the ALJ explained that she had "*generously* considered" these objective and diagnostic findings, but only "to the extent they support[ed]" the ALJ's RFC determination. (T at 27-28)(emphasis added).

This was a serious error.  First, the ALJ was obliged to consider the evidence as a matter of law; no "generosity" was required.  It is well-settled that medical reports "containing observations made after the period for disability are relevant to assess the claimant's disability." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988) (citing *Kemp v. Weinberger*, 522 F.2d 967, 969 (9th Cir. 1975)); *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1034 n.3 (9th Cir. 2007) (noting that "reports containing observations made after the period for disability are relevant to assess the claimant's disability"). Medical opinions "are inevitably rendered retrospectively," and thus "should not be disregarded solely on that basis." *Smith*, 849 F.2d at 1225.

Second, the ALJ was obliged to consider the evidence when formulating her RFC determination, not merely "to the extent" it supported an RFC determination she had apparently already made.

DECISION AND ORDER – WEBB v COLVIN 14-CV-00902-VEB

Third, the February 2011 x-ray occurred within the relevant time period and the April 2011 MRI occurred less than a month after the date last insured and certainly suggested conditions that pre-dated the date last insured.

For the foregoing reasons, this Court finds that the ALJ's consideration of the "changed circumstances" evidence was flawed and cannot be sustained.

**B.    Medical Opinion Evidence**

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Historically, the courts have recognized conflicting medical evidence, and/or the absence of regular medical treatment during the alleged period of disability, and/or the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain, as specific, legitimate

DECISION AND ORDER – WEBB v COLVIN 14-CV-00902-VEB

reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs*., 44 F.3d 1453, 1463-64 (9th Cir. 1995).

An ALJ satisfies the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014)(quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*.

### 1.    Dr. Klebel

Dr. Wolfgang Klebel, a psychologist, performed an initial assessment in February of 2012.   Plaintiff complained of numerous symptoms, including depression, lack of interest, sleep problems, difficulties with concentration, intrusive memories, suicidal ideations, and hyper-vigilance. (T at 276).  Dr. Klebel diagnosed major depression (severe, without psychotic features) and post-traumatic stress disorder, and recommended extended treatment. (T at 276-77).  Dr. Klebel assigned a GAF score of 40 (T at 276).  "A GAF score of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family

DECISION AND ORDER – WEBB v COLVIN 14-CV-00902-VEB

1   relations, judgment, thinking or mood." Tagin v. Astrue, No. 11-cv-05120, 2011

2   U.S. Dist. LEXIS 136237 at *8 n.1 (W.D.Wa. Nov. 28, 2011)(citations omitted).

3   In June of 2012, after nine treatment sessions, Dr. Klebel described Plaintiff's

4   progress as "[m]inimal" and characterized his prognosis as "[g]uarded." (T at 368).

5   In July of 2012, Dr. Klebel reported that Plaintiff was still experiencing moderate

6   suicidal ideations and assigned a GAF score of 45, which is indicative of serious

7   impairment. (T at 402),

8   On October 31, 2012, Dr. Klebel completed a psychiatric/psychological

9   impairment questionnaire.  He restated the diagnoses of major depression (severe,

10   without psychotic features) and post-traumatic stress disorder. (T at 432).   He

11   assigned a GAF score of 40 and described Plaintiff's prognosis as "guarded." (T at

12   432).   Dr. Klebel noted that Plaintiff suffered from, *inter alia*, poor memory,

13   psychomotor agitation or retardation, difficulty thinking or concentration, intrusive

14   recollections of a traumatic experience, and suicidal ideation. (T at 433).  Dr. Klebel

15   reported that Plaintiff had checked himself into a mental hospital for suicidal

16   ideations in 2010. (T at 434).

17   Dr. Klebel opined that Plaintiff had the following limitations: moderate

18   limitation as to remembering locations and work-like procedures; marked limitation

19   with regard to understanding and remembering detailed instructions; mild to

20

18

DECISION AND ORDER – WEBB v COLVIN 14-CV-00902-VEB

moderate limitations as to sustained concentration and persistence; generally mild to no limitation with respect to social interaction; and moderate limitation with respect to the ability to be aware of normal hazards and take appropriate precautions. (T at 435-37).

Dr. Klebel stated that Plaintiff was not a malingerer, could tolerate low work stress, and had "95% bad days, 5% good." (T at 438).  According to Dr. Klebel, Plaintiff's impairments or treatment would cause him to miss work more than 3 times per month. (T at 439).  Dr. Klebel opined that Plaintiff's symptoms and limitations began in January of 2006. (T at 439).  He explained that Plaintiff's PTSD flashbacks and nightmares "would make it very difficult for him to hold a job and work consistently at the job as required." (T at 439).

The ALJ gave little weight to Dr. Klebel's assessment. The ALJ found Dr. Klebel's conclusions inapplicable to the relevant time period, noting that (1) Dr. Klebel did not begin treating Plaintiff until almost a year later, (2) Plaintiff had "unremarkable" mental status examinations during the relevant time period, and (3) there was no objective medical evidence to support Dr. Klebel's assessed limitations during the relevant time period. (T at 31).  This Court finds the ALJ's reasons legally insufficient and not supported by substantial evidence.

DECISION AND ORDER – WEBB v COLVIN 14-CV-00902-VEB

1    First, as discussed above, Plaintiff's psychiatric history during the relevant

2    period was not "unremarkable" and included a psychiatric hospitalization (T at 276)

3    and psychiatric evaluation indicating serious impairment. (T at 359).

4    Second, although Dr. Klebel began treating Plaintiff after the date last insured,

5    he concluded that Plaintiff's problems arose from his December 2005 motorcycle

6    accident and that his symptoms and limitations began in January of 2006. (T at 439).

7    This expert opinion, provided by a professional with a significant treating

8    relationship with Plaintiff, was entitled to significant weight.  Moreover, the opinion

9    was consistent with the findings of Dr. Gene Berg, a consultative examiner, who

10   likewise concluded that Plaintiff's mental health impairments were severe and pre-

11   dated the date last insured. (T at 456)(Discussed further below).

12   No medical expert concluded that Plaintiff could met the mental demands of

13   basic work activity during the relevant time period; while two such experts

14   (including one – Dr. Klebel – with a significant  treating relationship) concluded that

15   Plaintiff had disabling mental health impairments that pre-dated the date last insured.

16   (T at 439, 448). This should have caused the ALJ to exercise caution in determining

17   Plaintiff's RFC. *See Garrison*, 759 F.3d at 1018 (finding that ALJ should have

18   exercised caution because "no doctor or other medical expert … opined, on the basis

19   of a full review of all relevant records, that [claimant] is capable of working or is

20

1  prepared to return to work")(citing Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir.

2  1989).

3      Instead, the ALJ found that there was "no objective evidence" to support Dr.

4  Klebel's assessment limitations during the relevant time period.  This, of course,

5  ignores the fact that Dr. Klebel's expert opinion, based on his extended treating

6  relationship, is *itself* objective evidence of disability during the relevant time period.

7  Dr. Berg's assessment (discussed further below) likewise constitutes objective

8  evidence of disabling mental impairments during the relevant time period.

9      To the extent the ALJ purported to rely on the presumption of continued non-

10  disability in support of her decision to discount Dr. Klebel's assessment– that

11  reliance was likewise in error.  Dr. Klebel's evaluation, which includes a new

12  diagnosis of post-traumatic stress disorder and a conclusion that Plaintiff's

13  symptoms and limitations were present during the relevant time period, was itself

14  new evidence concerning Plaintiff's mental health during that period.  Dr. Berg's

15  assessment, discussed further below, is also evidence of changed circumstances

16  sufficient to override the presumption of continued disability.

17      **2.      Dr. Berg**

18      Dr. Gene Berg, a clinical psychologist, performed a consultative

19  psychological evaluation on November 12, 2012.  Dr. Berg diagnosed major

DECISION AND ORDER – WEBB v COLVIN 14-CV-00902-VEB

depressive disorder recurrent, severe and impaired social occupational functioning. He assigned a GAF score of 45. (T at 448). Dr. Berg opined that Plaintiff would not be able to work a full-time job in the next year, due to moderate to significant depression and an inability to "manage the rigors of work." (T at 448). He identified Plaintiff as suffering from, *inter alia*, poor memory, mood disturbance, difficulty thinking or concentrating, decreased energy, and hostility and irritability. (T at 451).

Dr. Berg assessed moderate limitation as to Plaintiff's ability to remember locations and work-like procedures and marked limitation with respect to his ability to understand and remember one or two step instructions. (T at 453). He opined that Plaintiff had marked limitation as to maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerance; and working in coordination with or proximity to others without being distracted by them. (T at 453). Dr. Berg found marked limitations with regard to Plaintiff's ability to complete a normal workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, as well as his ability to accept instructions and respond appropriately to criticism from supervisor and get along with co-workers or peers without distracting them or exhibiting behavioral extremes. (T at 454). According to

Dr. Berg, Plaintiff is not a malingerer, is incapable of even a "low stress" job, and would be absent from work as a result of his impairments or treatments more than 3 times per month.  (T at 455-46).  Dr. Berg opined that these symptoms and limitations started in 2006. (T at 456).

The ALJ gave little weight to Dr. Berg's assessment, citing the same reasons provided to discount Dr. Klebel's opinion. (T at 31).  The ALJ's consideration of Dr. Berg's assessment is flawed for the same reasons outlined above.  Although he examined Plaintiff after the date last insured, Dr. Berg opined that Plaintiff's symptoms and limitations arose from his December 2005 accident and started in 2006. (T at 456).  The assessments of Dr. Klebel and Dr. Berg were mutually supporting and were not contradicted by any other treating or examining providers' opinions.  Two experts opined that Plaintiff's mental health impairments precluded him from meeting the demands of basic work activity prior to the date last insured. It was error for the ALJ to discount those expert opinions and rely on her own assessment and characterization of Plaintiff's psychiatric treatment during the relevant time period.

### 3.    Dr. Lam

In a letter dated November 17, 2011, Dr. Michael Lam explained that he had been Plaintiff's primary care physician since June of 2010.  He noted that Plaintiff

DECISION AND ORDER – WEBB v COLVIN 14-CV-00902-VEB

was involved in a motorcycle accident in 2005, wherein he sustained multiple rib fractures with punctured lungs. (T at 390).  Dr. Lam explained that, as a result of those injuries, Plaintiff had "chronic neuralgic pain along T4-8 nerve distribution." The pain is constant, requiring high doses of medication to provide temporary relief. Plaintiff also suffers from severe chronic right knee pain.  (T at 390).  Dr. Lam explained that Plaintiff had been evaluated by an orthopedic and neurosurgeon, but was deemed inoperable. (T at 39).  He also stated that Plaintiff has chronic mid and low level back pain due to multilevel disc bulges. (T at 390).

As a result of the foregoing, Dr. Lam opined that Plaintiff was permanently disabled and unable to work, especially in jobs that involved lifting, prolonged walking or sitting, heights, or fine motor activities. (T at 390).

The ALJ assigned "no probative value" to Dr. Lam's opinion, finding his limitations "vague and not supported by the objective medical evidence during the relevant period at issue." (T at 29).  The ALJ reached this conclusion primarily by noting that the April 2011 MRI occurred subsequent to the date last insured and thus finding it of reduced relevant to the question of disability. (T at 29).  However, Dr. Lam's opinion is supported by the February 2011 x-ray, which occurred prior to the date last insured, and there is no indication that the April 2011 MRI (which was taken less than a month after the date last insured and which revealed significant

DECISION AND ORDER – WEBB v COLVIN 14-CV-00902-VEB

degenerative damage) was revealing conditions that had first appeared or been materially aggravated in the three weeks between the date last insured and the date of the MRI.

Moreover, Dr. Lam's assessment cannot be fairly characterized as "vague," as it provides specific limitations and explanations for the overall findings. (T at 390). In addition, Dr. Lam's opinion, which is based on an extended treating relationship with Plaintiff, is uncontradicted by any other treating or examining assessments in the record.  This Court thus finds that the ALJ erred in assigning no weight to Dr. Lam's opinion.

## C.    Credibility

A claimant's subjective complaints concerning his or her limitations are an important part of a disability claim. *Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1195 (9th Cir. 2004)(citation omitted). The ALJ's findings with regard to the claimant's credibility must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible

1   and what evidence undermines the claimant's complaints." *Leste*r, 81 F.3d at 834;

2   *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

3        However, subjective symptomatology by itself cannot be the basis for a

4   finding of disability. A claimant must present medical evidence or findings that the

5   existence of an underlying condition could reasonably be expected to produce the

6   symptomatology alleged. See 42 U.S.C. §§423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R.

7   § 404.1529(b), 416.929; SSR 96-7p.

8        In this case, Plaintiff testified as follows:

9        He wears a knee brace whenever he goes for a walk, although usually not

10  around the house. (T at 46-47).  He sometimes uses a wheelchair, although it has not

11  been prescribed for him. (T at 47).  He was committed to a psychiatric hospital in

12  2010 for 72 hours due to suicidal thoughts. (T at 49-50).  He began seeing a

13  psychiatrist after his insurance changed. (T at 50).  Rather than using a brace at

14  home, he leans on walls and does not walk very far. (T at 50).  He suffers nightmares

15  and "daymares" regarding his motorcycle accident. (T at 51).  He has no recollection

16  of the 13-day period following the accident. (T at 51).  His medications cause him to

17  experience nausea and feelings of lightheadedness. (T at 52).  Difficulties with sleep

18  cause fatigue. (T at 53).  He sleeps in a recliner chair due to back pain. (T at 53).

19

20

DECISION AND ORDER – WEBB v COLVIN 14-CV-00902-VEB

1   Back pain causes him to fall 4 or 5 time per month. (T at 53).   His doctor

2   recommended a knee replacement, but believes Plaintiff is too young. (T at 54)

3        The ALJ concluded that Plaintiff's medically determinable impairments could

4   reasonably be expected to cause the alleged symptoms, but that his statements

5   concerning the intensity, persistence, and limiting effects of the symptoms were not

6   fully credible. (T at 27).

7        This Court finds the ALJ's credibility assessment flawed.   The ALJ described

8   Plaintiff's mental health treatment during the relevant time period as "routine," and,

9   thus, inconsistent with his claims of disabling depression and anxiety. (T at 26).

10   However, as discussed above, Plaintiff experienced a psychiatric hospitalization and

11   underwent multiple psychiatric evaluations during this time.

12        Although Plaintiff did not start seeing a psychologist regularly until after the

13   date last insured, this may have been due to an insurance issue (T at 50), rather than

14   a lack of urgency in his symptoms.   Moreover, both his treating psychologist and a

15   consultative examiner opined that Plaintiff had serious mental health limitations that

16   pre-dated the date last insured. (T at 439, 456).   With regard to his knee impairment,

17   the ALJ recognized that diagnostic findings after the date last insured "reveal[ed]

18   severe degenerative changes" in Plaintiff's right knee. (T at 29).   As discussed

19

20

above, the ALJ improperly discounted these findings, which were made very shortly after the date last insured.

The ALJ also discounted Plaintiff's complaints of knee pain on the grounds that Plaintiff never received surgery or was referred to a specialist. (T at 26). However, this ignores Dr. Lam's November 2011 letter, in which he explained that Plaintiff had been "evaluated by an orthopedic and neurosurgeon and was deemed inoperable." (T at 390).

Lastly, it is noted that Dr. Klebel (who had a lengthy treating relationship with Plaintiff) and Dr. Berg (a consultative examiner) both believed that Plaintiff was not a malingerer. (T at 438, 455).   Likewise, both medical experts concluded that Plaintiff had disabling mental health limitations that pre-dated the date last insured. (T at 439, 448).  In contrast, no treating or examining provider opined that Plaintiff could perform the mental demands of basic work activity during the relevant time period.

For the foregoing reasons, this Court finds that the ALJ's credibility determination cannot be sustained.

## D.    Remand

In a case where the ALJ's determination is not supported by substantial evidence or is tainted by legal error, the court may remand for additional

DECISION AND ORDER – WEBB v COLVIN 14-CV-00902-VEB

proceedings or an immediate award of benefits. Remand for additional proceedings is proper where (1) outstanding issues must be resolved, and (2) it is not clear from the record before the court that a claimant is disabled. *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

In contrast, an award of benefits may be directed where the record has been fully developed and where further administrative proceedings would serve no useful purpose. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).  Courts have remanded for an award of benefits where (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id*. (citing *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir.1989); *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989); *Varney v. Sec'y of Health & Human Servs*., 859 F.2d 1396, 1401 (9th Cir.1988)).

In this case, for the reasons stated above, this Court finds that the ALJ failed to provide legally sufficient reasons for rejecting new and material evidence relating to the relevant time period. There are no outstanding issues that must be resolved before a determination of disability can be made.  It is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

DECISION AND ORDER – WEBB v COLVIN 14-CV-00902-VEB

Two psychologists (a treating physician with a long-term treating relationship and a consultative examiner) concluded that Plaintiff had serious mental health limitations pre-dating the date last insured.  (T at 439, 448, 456).  Plaintiff's treating primary care physician opined that his physical impairments prevented him from working and limited significantly his ability to lift, sit for prolonged periods, and engage in fine motor activities.  (T at 390).  This opinion was supported by diagnostic findings that pre-dated the date last insurance and post-dated that date by a very short period. If credited, this evidence conclusively establishes disability, which makes a remand for calculation of benefits the appropriate remedy.


**V. ORDERS**

IT IS THEREFORE ORDERED that:

Judgment be entered REVERSING the Commissioner's decision and REMANDING this case for calculation of benefits consistent with this Decision and Order; and

DECISION AND ORDER – WEBB v COLVIN 14-CV-00902-VEB

The Clerk of the Court shall file this Decision and Order, serve copies upon counsel for the parties, and CLOSE this case, without prejudice to a timely application for attorneys' fees.

DATED this 6th day of March, 2016,

/s/Victor E. Bianchini
VICTOR E. BIANCHINI
UNITED STATES MAGISTRATE JUDGE

DECISION AND ORDER – WEBB v COLVIN 14-CV-00902-VEB